IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

**LAURIE C. KIANKA**,

    Plaintiff,

v.

                                                          No. _____

**THE UNIVERSITY OF THE SOUTH**
a/k/a **SEWANEE: THE UNIVERSITY**
**OF THE SOUTH** a/k/a **SEWANEE**

    Defendant.

## **COMPLAINT**

Comes the Plaintiff, Laurie Kianka, by and through counsel, and sues the Defendant, for a cause of action, claims and alleges as follows:

1.    The Plaintiff, Laurie Kianka, is a citizen resident of Franklin County, Tennessee.

2.    The Defendant, The University of the South, a/k/a Sewanee: The University of the South a/k/a Sewanee (hereinafter "Sewanee" or "Defendant") is an institution of higher learning located in Franklin County, Tennessee.

3.    This Court's subject matter jurisdiction rests with 28 U.S.C. §1331.

4.    Plaintiff has exhausted all administrative remedies and conditions precedent to the timely filing of this action.

5.    Venue is proper in this Court under 28 U.S.C. §1391(b), because the events and omissions giving rise to this action are heard in this judicial district.

6. This is a civil action seeking injunctive and monetary relief for injuries suffered and sustained by Plaintiff because of Defendant's unlawful policies and practices of gender discrimination, including Plaintiff's disparate compensation, harassment, and unlawful termination of her employment as a direct result of her gender in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C. §2000e.

7. Defendant is an "employer" within the meaning of Title VII and employs more than twenty employees.

8. At all times material to this action, Plaintiff was a "person" and/or "employee" of Defendant as defined by §2000e of Title VII, and performed exemplary in all positions she served in with the Defendant, therefore was an otherwise "qualified" individual at all times including the date of termination.

9. The Plaintiff began her employment with Defendant in October, 1997, as a construction project coordinator. In June of 2000, she applied for and became the Director of Rental Housing. In July of 2007, she served as Defendant's Special Project & Environmental Health Safety Manager until her unlawful termination on May 27, 2014.

10. As Defendant's Special Project & Environmental Health Safety Manager, Plaintiff was responsible for overseeing the successful management and construction of special projects. Plaintiff's last project was the supervision of the Sewanee Inn, a multi-million dollar project that was completed in early May 2014, and opened that month. Plaintiff was the only female involved in a significant project management role at the University.

11. During Plaintiff's tenure, she completed more than seventy-five projects on time and within budget. The Sewanee Inn was the most time sensitive and highly visible

project for Defendant. Plaintiff's job performance evaluations throughout her tenure were all highly favorable, and management and administration of Defendant were frequently and highly complementary of the quality of Plaintiff's work.

12. Yet, Plaintiff was treated differently, and considerably more harshly, as compared to similarly situated male project managers while she was in Defendant's employ. While Plaintiff was employed, her male colleagues had greater ability to select their own projects, while undesirable or more complex projects were delegated to Plaintiff. Compared to Plaintiff, her male colleagues were given greater information, assistance with document preparation, and greater financial authority over project expenditures and expenses. Further, Plaintiff's male colleagues were paid a greater salary and received larger performance based increases than Plaintiff despite the fact that she was similarly situated with her male colleagues in all material aspects.

13. Plaintiff's last supervisor began work with the Defendant in December of 2013. He engaged in an inappropriate personal relationship with a clerical employee whom he supervised. Despite her lack of qualifications and experience, the clerical employee was promoted by Plaintiff's supervisor to a position supervising colleagues who had previously been her peers. Plaintiff avers that this conduct violated Defendant's internal employment guidelines and the same was reported to the Defendant's human resources department.

14. Despite the fact that Plaintiff played no part or furnished any information with regard to the investigation into her supervisor's alleged violation of Defendant's sexual harassment policies, Defendant, through various supervisory employees, became hostile, uncooperative, and intimidating. Plaintiff avers Defendant's conduct during this

time was severe and pervasive. Plaintiff also avers that similarly situated male colleagues actually participated in providing information to the human resource department regarding its investigation into the alleged relationship, but were not retaliated against in any way by the Defendant.

15. The Sewanee Inn project was completed on time and within budget in May 2014. Yet, rather than receiving a single accolade or any recognition for playing any part in the successful completion of the project, Defendant summoned Plaintiff into a meeting and terminated her employment. Defendant then attempted to get Plaintiff to execute a small severance package in exchange for giving up any rights she had in redressing Defendant's unlawful conduct. Plaintiff refused to sign the agreement.

16. Plaintiff avers Defendant discriminated against her on account of her gender with respect to the wages, benefits and other terms and conditions of her employment.

17. Plaintiff avers that she was paid a considerably lower salary and received lower incentive amounts than similarly situated male colleagues charged with performing the same duties Plaintiff had on overseeing and managing the various construction projects undertaken by Defendant. Accordingly, Plaintiff avers that she be awarded the difference between the wages and benefits she received and the wages and benefits Defendants provided to Plaintiff's similarly situated male colleagues.

18. Plaintiff avers that Defendant repeatedly attempted to justify its disparate treatment of Plaintiff by assigning her to Defendant's most undesirable and complex projects without providing her with the assistance it did Plaintiff's similarly situated male colleagues, and unlawfully refused to provide Plaintiff with the authority already

4

possessed by her similarly-situated male colleagues necessary to achieve the successful completion of the construction project Defendant delegated and/or assigned to Plaintiff.

19. Plaintiff avers Defendant's delegations/assignments of Plaintiff to projects was predicated on the basis of the Defendant's assumption that she would be unable to complete the project within budget, and therefore justify a "cause" termination, as a pretext for its unlawful discrimination against Plaintiff predicated upon Plaintiff's gender.

20. Plaintiff avers that Defendant's termination of her was motivated by its perception that Plaintiff played a role in furnishing information, which she did not, in the unlawful conduct of her male supervisor to its human resource department. Plaintiff avers other similarly-situated male employees provided information regarding the alleged investigation but Defendant did not retaliate against any of them. Plaintiff avers Defendant retaliated against her on its perception that she furnished information to Defendant's human resource department concerning her male supervisor, and therefore embarrassing Defendant, and retaliated against her on account of her gender in terminating her.

21. Plaintiff avers that since Defendant terminated her, Defendant has either hired or assigned the duties she performed to other less qualified male employees in derogation of Title VII.

22. As an alternative, and supplemental claim pursuant to 28 U.S.C. §1367, Plaintiff avers that her termination and discrimination with respect to the wages, benefits, and other terms and conditions of her employment constitute breach of contract for which she is entitled to damages.

WHEREFORE, Plaintiff Laurie Kianka, respectfully prays for relief as follows:

5

Case 1:16-cv-00504-CHS   Document 1   Filed 12/22/16   Page 5 of 6   PageID #: 5

1. That process issue and Defendant be required to answer Plaintiff's Complaint within the time prescribed by the Federal Rules of Civil Procedure;

2. That Plaintiff be awarded damages in the amount of wages, salary, employment benefits and other compensation, including, but not limited to, back pay and front pay (or reinstatement), plus, to the extent applicable, liquidated damages and prejudgment interest, compensatory damages for mental anguish, emotional distress, loss of enjoyment of life, inconvenience, and other non-pecuniary losses, and punitive damages for Defendant's intentional indifference to Plaintiff's federally-protected rights;

3. That Plaintiff be awarded reasonable attorneys' fees, and costs in an amount to be determined by the Court;

4. That Defendant be enjoined for further implementing its policy of engaging in unlawful gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e;

5. That Plaintiff be awarded such other legal and equitable relief to which she may be entitled; and

6. Plaintiff further demands a jury to try this cause.

Respectfully submitted,

*s/ Arthur F. Knight, III*
Arthur F. Knight, III, BPR #016178
Taylor & Knight, G.P.
P.O. Box 1710
Knoxville, TN 37901-1710
(865) 522-5057
*Attorney for Plaintiffs*